10 N.J. Super. 306 (1950)
76 A.2d 280
JOHN R. DITMARS, GLADYS L. REED AND KATHRYN C. WOLFORD, PLAINTIFFS,
v.
CAMDEN TRUST COMPANY, INDIVIDUALLY AND AS TRUSTEE UNDER THE WILL OF JOHN R. DITMARS, DECEASED, JACOB W. HOUCK, AS ADMINISTRATOR OF KATHARINE L. DITMARS, DECEASED, AND AUGUSTIN S. HART, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 4, 1950.
*315 Mr. George W.C. McCarter for the plaintiff (Messrs. McCarter, English & Studer, attorneys).
Mr. Scott Scammell for the plaintiffs, Gladys L. Reed and Kathryn C. Wolford (Messrs. Scammell & Reese, attorneys).
Mr. Walter R. Carroll for defendant, Camden Trust Company, individually and as trustee under the will of John R. *316 Ditmars, deceased (Messrs. Carroll, Taylor & Bischoff, attorneys).
No appearance for the defendant Jacob W. Houck, as administrator of Katharine L. Ditmars, deceased.
HANEMAN, J.S.C.
The decedent, John R. Ditmars, died on December 21, 1925. On January 4, 1926, his last will and testament was probated before the Surrogate of Camden County. The Camden Safe Deposit and Trust Company, later known as Camden Trust Company, and Katharine L. Ditmars, widow of the testator (step-mother of the exceptants), were named therein as and appointed executors.
John R. Ditmars, Jr., the son of the testator and one of the exceptants, filed an appeal to the Camden County Orphan's Court from the decree probating the will, on the ground that it was not in truth the last will and testament of his father. The Camden County Orphan's Court affirmed the decree of the Surrogate. John R. Ditmars, Jr., then appealed to the Prerogative Court, which court affirmed the lower court. An appeal was then taken by John R. Ditmars, Jr., to the Court of Errors and Appeals but the said litigation was terminated by an agreement which was dated October 19, 1928.
During the said litigation, the First Camden National Bank and Trust Company was appointed administrator pendente lite and acted as such. While the litigation involving the probate of the will was pending the executors filed their first account covering the period from the death of the testator to the time when the administrator pendente lite assumed its duties. The said account was approved by the Camden County Orphan's Court on February 4, 1927. This account had annexed thereto "Schedule E  List of Investments," which showed the investments of the estate. The investments, as shown by the said schedule, had a valuation of $106,090.80. The valuation placed upon each of the investments was the inventory valuation. The Inventory and *317 Appraisement was filed on February 17, 1926. The total of the Inventory and Appraisement was $107,625.70. There was also annexed to the first account "Schedule F  Changes in Investments," which showed that the executors had sold certain securities. No exceptions were filed to the said first account.
Thereafter, the administrator pendente lite filed its account covering the period from the time of its appointment to the date of the account, which was approved by the Camden County Orphan's Court on December 7, 1928. There was annexed to this account a detailed "Statement of Assets," showing the value of the assets, including the cash on hand, to be $99,864.44. The valuation of each investment as shown on the said "Statement of Assets" was the original inventory valuation.
The executors' second and final account was approved by the Camden County Orphan's Court on March 7, 1930. There was annexed to the account "Schedule F  List of Investments," which showed a valuation of $86,915.50. The original inventory valuation was used as the valuation of each investment shown on said Schedule F. There was also annexed a list of the changes that had been made. No exceptions were filed to the said account.
All parties in interest, including the three exceptants, were parties to the said three accounts, and according to the respective decrees allowing each of the said accounts, were duly notified, as required by law, that the said accounts were to be settled.
The Camden Trust Company (hereafter referred to as the Trust Co. or Trustee, depending upon whether reference is to individual or fiduciary capacity) was the sole trustee named in the will and assumed its duties as such after the executors' second and final account was approved on March 7, 1930.
Under the terms of the will, the residue formed the trust corpus. The income was to be given to Katharine L. Ditmars, the widow, during her lifetime, and upon her death, distribution was to be made to the testator's three children, the exceptants. *318 The widow died on February 26, 1941. The original bill of complaint was filed in this court on April 24, 1941, and the amended bill of complaint was filed on May 26, 1941. This court took jurisdiction by a decree dated November 25, 1941, and directed the Trustee to file its account in this court and the complainants to file and serve their exceptions thereto. Reference was made to I. Herbert Levy, a Special Master of the Court of Chancery.
The first and final account of the Trust Co., as Trustee involved in this proceeding, was filed in March, 1942. It showed the balance in its hands at that time to be $74,671.44 at the "inventory or cost value." Schedule G annexed to the said account, however, showed the "Market Value" on February 17, 1942, to be $150,973.02.
A supplemental account of the Trustee, dated March 26, 1945, was filed, but this supplemental account was not referred to the Master to audit. It shows the estimated market value of the assets to be $198,361.07. No subsequent account has been filed to show the valuation as of the present time.
The agreement above referred to, being dated October 19, 1928, was made between Katharine L. Ditmars and Camden Safe Deposit & Trust Company, as executors; Katharine L. Ditmars, individually; Camden Safe Deposit & Trust Company, as Trustee; and John R. Ditmars, Jr. This agreement, among other things, provided (1) for a division, as set forth in the agreement, of the income on hand between Katharine L. Ditmars and John R. Ditmars, Jr.; (2) for Katharine L. Ditmars to receive from and after October 1, 1928, only $3,600 per year from the income, and for the remaining income (less the carrying charges of the property in which the widow lived) to be paid to John R. Ditmars, Jr.; (3) for a renunciation of whatever rights the widow had under paragraph Sixth of the will; and (4) for certain commissions to the executors and allowances to counsel, which were made subject to the approval of the Camden County Orphan's Court. (5) Paragraph 10 of the agreement also provided as follows:
*319 "Camden Safe Deposit and Trust Company, as trustee under the will of John R. Ditmars, deceased, agrees with John R. Ditmars, Jr., that in addition to the written consent of Katharine L. Ditmars called for by the Fifth clause of the said will, it will not, without the order of a court of competent jurisdiction, vary or alter the investments which it may receive as such executor and trustee, without the concurrence in writing of John R. Ditmars, Jr."
On June 6, 1930, an assignment was made by John R. Ditmars, Jr., to Camden Safe Deposit and Trust Company, in which John R. Ditmars, Jr., assigned to the said Trust Co. all his right, title and interest in the estate of his father as collateral to secure the repayment of a loan made by the said Trust Co. to him.
On May 11, 1934, an agreement was entered into between Katharine L. Ditmars and John R. Ditmars, Jr., and Camden Safe Deposit and Trust Company, as Trustee, in which the agreement dated October 19, 1928, was changed and modified so that the widow's annual income was reduced from $3,600 to $1,800 beginning January 1, 1934, and which, in all other respects, reaffirmed the agreement dated October 19, 1928.
On September 24, 1935, an agreement was entered into between Camden Safe Deposit and Trust Company, individually, and John R. Ditmars, Jr., which provided, among other things, that (1) the Trust Co. would loan Ditmars additional money; (2) as long as the interest was paid on the same at the rate of 6% per annum the Trust Co. would not demand that Ditmars pay any of his indebtedness to the Trust Co. prior to five years; (3) Ditmars affirmed the previous assignment dated June 6, 1930; and (4) Ditmars agreed that he would not, for a period of five years, institute any proceedings to surcharge the Trust Co. for any loss which the estate might suffer by reason of the fact that Ditmars claimed that it had invested $10,000 of the estate's money improperly in Leeds and Lippincott Company bonds, and (5)
"Except as in the next preceding paragraph hereof provided, Ditmars approves of each and all of the investments heretofore made by the Bank or held by it as trustee under the will of John R. Ditmars, deceased, and approves of the administration of the said trust estate by the Bank as disclosed by the Bank to Ditmars to date." *320 The reference to the "next preceding paragraph" relates to the investment in Leeds & Lippincott Co. bonds.
None of the foregoing agreements was signed by Gladys L. Reed or Kathryn C. Wolford. No proof was adduced to show that John R. Ditmars, Jr., was the agent of or was authorized to sign the said agreement in any manner that would be binding upon the said Gladys L. Reed and Kathryn C. Wolford.
The exceptants, John R. Ditmars, Jr., Gladys L. Reed and Kathryn C. Wolford, filed 297 specific exceptions to the account and a general exception to the entire account.
The plaintiffs filed numerous exceptions to the report of the said Master.
Counsel for the exceptants attempted to file and offer in evidence what is referred to as the "Additional Exceptions," the 298th exception above referred to, and stated what he hoped to prove by such additional exceptions, if such additional exceptions could be added to the original 297 exceptions and if proof could be taken in support of the same.
The Master ruled that these "Additional Exceptions" were not within the scope of the reference. Plaintiffs then made an application directly to the court to amend the bill of complaint to include a fourth cause of action which would enable them to contest the various matters covered by the "Additional Exceptions." This application was denied by the court for the reasons stated in its opinion filed in this cause on November 25, 1941. Thereafter, they still urged the "Additional Exceptions" before the Master, who held that they did not have any right to a hearing thereon.
These "Additional Exceptions" contemplated the following  (1) that the executors had no right to sell 60 shares of Homestake Mining Company and 16 shares of Hercules Powder Company; (2) that the executors had no right to make a certain payment of $2,760.20 from income to Katharine L. Ditmars; (3) that the executors had failed to make a proper apportionment between the life tenant and the remaindermen in connection with some of the securities; and (4) that it was the duty of the Trustee under the case of *321 Gates v. Plainfield Trust Co., 121 N.J. Eq. 460, 191 A. 304 (Ch. 1937); affirmed, 122 N.J. Eq. 366, 194 A. 65 (E. & A. 1937), to see that the executors turned over to the Trustee proper assets.
Subsequent to the commencement of this action, John R. Ditmars, Jr., who had up to that point been represented by the same counsel who represented the other plaintiffs, obtained separate counsel. Plaintiffs, Gladys L. Reed and Kathryn C. Wolford, continued to be represented by their original counsel.
On April 23, 1941, the defendant, Camden Trust Company, commenced a suit in the then New Jersey Supreme Court, seeking a judgment against John R. Ditmars, Jr., upon certain promissory notes made by him and discounted by it. The prosecution of this action was enjoined during the pendency of the present suit. Upon his motion, leave was granted to file an answer and counterclaim in the present cause. He set up, in brief, the following defenses: (1) Statute of Limitations, and (2) payment, and (3) usury. The said plaintiff as well counterclaimed for the sum of $1,265.26 allegedly obtained from him upon a mortgage when nothing was due thereon.
The complaint in this cause was amended to the end that there was included a demand for the removal of the Trustee.
The Special Master above referred to filed his report, to which the plaintiffs have taken the exceptions, which may, for convenience, be grouped and stated as follows:
(1) To the Master's conclusion that he would not consider nor decide upon the right of the defendant Camden Trust Company, as executor, to sell certain securities which it sold while acting as executor, and to the Master's refusal to find that said defendant should be surcharged for the loss resulting from such acts.
(2) To the Master's conclusion that he would not consider nor decide upon the right of the defendant Camden Trust Company as executor to make a payment of $2,796.20 to the widow of the decedent.
*322 (3) To the Master's conclusion that he would not consider nor decide upon the proper apportionment by the defendant Camden Trust Company as executor, between the life tenant and remaindermen, of certain interest and dividends received by the executor.
(4) To the Master's conclusion that he would not consider nor decide upon the duty of the defendant Camden Trust Company as trustee to make certain that it received from the executors the proper assets for the trust estate, and to the Master's refusal to find that said defendant should be surcharged for the loss resulting from accepting for the trust estate improper securities and assets from the executors.
(5) To the Master's finding and conclusion that the Trustee should not be surcharged for the loss occasioned by reason of its failure either to sell the shares of stock of International Match Corporation as soon as it received them as Trustee, or to request the instruction of the court as to the course to be followed.
(6) To the Master's finding and conclusion that the Trustee acted properly in retaining a Toho Electric Co. bond until December, 1931, the date of the consent of the life tenant, and that John R. Ditmars, Jr., was barred from any participation in any surcharge.
(7) To the Master's finding and conclusion that the Trustee acted properly in retaining the so-called German bonds until March, 1931, and that John R. Ditmars, Jr., was barred from any participation in any surcharge.
(8) To the Master's finding and conclusion that the Trustee acted properly in retaining the Chicago Rapid Transit Co. bonds until May, 1931, but that it then should have attempted to obtain Katharine L. Ditmars' approval of a sale.
(9) To the Master's finding and conclusion in disallowing the exception that it was unnecessary and negligent to sell the Keystone Telephone Co. bond at a loss.
(10) Because the Master allowed interest on surcharges at 4% when he should have allowed 6%.
(11) To the Master's finding and conclusion that the Trustee *323 should not be surcharged for commissions taken without prior allowance by the court.
(12) To the Master's finding and conclusion that the rate of the Trustee's commissions was reasonable.
(13) To the Master's finding and conclusion in refusing to allow the withdrawal of the waiver alleged to have been made by Mr. Scammell concerning the above referred to exceptions which I have designated as 11 and 12.
(14) To the Master's refusal to find that for various sums allegedly paid to John R. Ditmars, Jr., there were (1) no vouchers, or (2) not in fact paid to him, or (3) all payments of interest on his loan made to the Camden Trust Co. were usurious.
The defendants' exceptions to the Master's report may, for convenience, be grouped and stated as follows:
(1) To the Master's finding and conclusion that the Trustee should be surcharged for failing to sell the Equitable Office Building Corporation stock.
(2) To the Master's finding and conclusion that the Trustee should be surcharged for failing to sell the "German" bonds.
(3) To the Master's finding and conclusion that the Trustee should be surcharged for failing to recommend and to actually sell the Chicago Rapid Transit Co. bonds.
Generally stated, the additional issues here presented, as set forth in the pretrial order, are as follows:
(1) Usury of the defendant in its individual capacity both as an affirmative claim of John R. Ditmars, Jr., and as a defense to the Trust Co.'s action on his notes discounted by it.
(2) Statute of Limitations, as a defense to the Trust Co.'s action on the notes of John R. Ditmars, Jr., discounted by it.
(3) The payment of $1,265.26 to the Trust Co. in its individual capacity from the so-called Dilks transaction was illegal.
(4) The ascertainment of the amount of the balance due John R. Ditmars, Jr., or the Camden Trust Co., as a result of the foregoing.
*324 (5) The removal of the Trustee upon the theory that the Trustee was disloyal to the remaindermen and influenced by its own interest.
Prior to the consideration of the separate and individual exceptions, there are several preliminary questions which should be decided and disposed of. These relate to and recur in a number of the separate exceptions and are advanced as reasons for the affirmance or reversal of the Master. They are as follows:
1. The responsibility of the Trustee for failing to sell securities where the life beneficiary refused to consent, including the nature of the contents of the request for the consent of the life tenant and the question of whether there was a duty imposed upon it to apply to the court in the event of such a refusal.
2. The degree of care required of the Trustee in managing the estate, prior to a request for a consent of the life tenant to sell, where the life tenant's consent to a sale was not requested.
3. The efficacy and effect of the several agreements with John R. Ditmars, Jr., insofar as he is concerned, and their effect upon the interests of Gladys L. Reed and Kathryn C. Wolford, and the relationship of John R. Ditmars, Jr., to the Trust Co.

PRELIMINARY QUESTIONS

1
The first inquiry hereunder concerns itself with the power of this Trustee to retain investments found in the portfolio at the inception of the trust.
The exceptants concede that the retention of investments which were a part of the estate of the deceased was expressly authorized by the terms of the will. They make no point of the failure of the Trustee to invest in "legals." With this position we are in accord.
The second inquiry hereunder concerns itself with the duty of the Trustee, when the life tenant refused to give her consent, *325 as required by the will, to a disposal of investments, to apply to the court for instructions.
The will, so far as here pertinent, provides as follows:
"Fourth:  I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, to Camden Safe Deposit and Trust Company, a corporation organized under the laws of New Jersey, in trust, nevertheless:
"(a) To invest the same and to pay the income arising therefrom to my wife, Katharine L. Ditmars, during the period of her natural life.
"(b) Upon the death of my said wife, Katharine L. Ditmars, it is my will and I direct that Camden Safe Deposit and Trust Company, trustee as aforesaid, pay all the rest, residue and remainder of my estate to my children, Gladys L. Reed, Katharine C. Woolford, and John R. Ditmars, Jr., to be divided between them equally, share and share alike; provided, however, that the sum of $11,137.50 which I have advanced to my said son, John R. Ditmars, Jr., shall be taken in part satisfaction of his share as aforesaid.
"Fifth:  It is my will that all stocks, bonds and other securities belonging to me shall form a part of the trust fund created by my will, but my trustee, with the concurrence in writing of my wife, the said Katharine L. Ditmars, may vary or alter the aforesaid investments, whenever in its judgment it shall be deemed to be for the best interest of my estate so to do. I direct, however, that security of the investment and stability of dividend or interest return, shall be the controlling factors in the choice of any such new investments.
"Sixth:  If at any time the income arising from the trust fund hereby created shall, in the judgment of my wife, be inadequate for her comfortable support and maintenance, I authorize my trustee, on the application of my wife, to transfer to her absolutely such portion of the corpus of the trust fund as shall in its judgment be wise and provident under the circumstances, bearing in mind always that my chief object and desire is to conserve the principal of the trust fund so as to secure to my wife a reasonably certain fixed and adequate income during her life."
The duty of a fiduciary, in the event of a failure of some third party, whose precedent consent is required for the sale of trust securities, to consent thereto, is dependent upon whether, in the exercise of such power, the third party was acting solely for her own benefit or as a fiduciary for the benefit of some other party.
Restatement of the Law, Trusts, § 185, p. 470, states as follows:
*326 "If under the terms of the trust a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power, unless the attempted exercise of the power violates the terms of the trust or is a violation of a fiduciary duty to which such person is subject in the exercise of the power."
"It is a question of interpretation whether a power reserved to the settlor to control the trustee in disposing of and making investments is a power for the benefit of the beneficiaries of the trust generally or for the benefit of the settlor alone or for the benefit of both the beneficiaries generally and of the settlor."
"d. Duties of the trustee where power is for the sole benefit of the holder. If the power is for the sole benefit of the person holding the power, the only duty of the trustee is to ascertain whether the attempted exercise of the power is or is not within the terms of the trust and to act accordingly.
"e. Duty of trustee where holder of power is subject to fiduciary obligations. If the power is for the benefit of someone other than the holder of the power, the holder of the power is subject to a fiduciary duty in the exercise of the power. In such a case the trustee is under a duty similar to his duty with respect to the action of a co-trustee (see sec. 184). If the trustee has reason to suspect that the holder of a power is attempting to exercise it in violation of a fiduciary duty to which the holder is subject in the exercise of the power, the trustee is under a duty not to comply and may be liable if he does comply. If the holder of the power insists upon compliance notwithstanding the objection of the trustee, it is the duty of the trustee to apply to the court for instructions."
"Duty of a trustee to take initiative where action subject to consent of another. Where it is provided that the trustee shall act only with the consent of another, the trustee is not justified in doing nothing until such consent is given, but should undertake to obtain the consent of the other if the circumstances are such that the trustee deems that action ought to be taken. If the other refuses to give his consent, the trustee is ordinarily justified in doing nothing further. If, however, the trustee knows, or a reasonable inquiry and investigation by the trustee would disclose, that the failure of the other to consent violates the terms of the trust or is a violation of a fiduciary duty to which the other is subject (see Comments c-e), it is the duty of the trustee to apply to the court for instructions."
See also In re Rolston's Estate, 294 N.Y.S. 114. Scott on Trusts, § 185, p. 972, at p. 978:
"Where the holder of the power holds it solely for his own benefit, the trustee can properly comply and is under a duty to comply with his directions, provided that the attempted exercise of the power does not violate the terms of the trust."
*327 It seems patent that the testator had in mind as his "chief object and desire * * * to secure to my wife a reasonably certain fixed and adequate income during her life." Reading paragraphs 5th and 6th of the will together, it is plain that the power vested in the widow to control the sale of securities was for her sole benefit. The trustee could, under proper circumstances, with propriety, have used the entire corpus of the estate for the "comfortable support and maintenance" of the widow, and have left the remaindermen with no assets whatsoever. The power to consent was for the sole benefit of the widow  she did not hold such fiduciary relationship to the remaindermen as required the trustee to do anything further than to ascertain whether the refusal to consent violated the terms of the trust or was a violation of a fiduciary duty.
Although neither counsel nor the court have found a case precisely in point in New Jersey, both Nelson v. American Trust Co., 104 N.J. Eq. 594, 146 A. 460 (Ch. 1929); affirmed, 106 N.J. Eq. 282, 150 A. 919 (E. & A. 1930), and In re Cross, 117 N.J. Eq. 429, 176 A. 101 (E. & A. 1935), inferentially sustain this position.
In the former case the court implied that the widow held her power as a fiduciary.
In the latter case the court expressly held that the power was fiduciary in nature.
The court would not, in any event have forced the life tenant, in the face of the circumstances and facts here present, to consent to a sale, especially in view of the nature of the power granted by the testator. The refusal would have had to have constituted a violation of the primary trust or a violation of a fiduciary relationship owed a third party before the court would intervene, and then it must have been demonstrated that the refusal would probably result in a loss. Tansey v. New Brunswick Trust Co., 124 N.J. Eq. 558, 3 A.2d 575 (Ch. 1938); McFerran v. Paterson National Bank, 125 N.J. Eq. 456, 6 A.2d 403 (Ch. 1939); Green v. Green, 134 N.J. Eq. 479, 36 A.2d 217 (Ch. 1944).
*328 There is no evidence that the Trustee did not advise the widow of the bases for its suggestions for sales. The burden was upon the plaintiffs to adduce proof of the absence of such reasons to hold the Trustee liable for its failure to so do. The burden was not cast upon the Trustee to prove the type of notice and information furnished to the life tenant.
Since the power to control the action of the Trustee was vested in a person for whose sole benefit such power was created, there was no duty upon the Trustee to seek the instruction of the court.
The Trustee is not here liable for losses resulting from a refusal of the life tenant to consent to a sale, nor obliged, upon such refusal, to apply to the court for instructions. The notice given to the life tenant in the demand for consent to a sale, for all that appears, was sufficient.

II.
Prior to an attempt by the Trustee to obtain a consent from the life tenant to a sale, or where the Trustee failed to seek the permission of the life tenant for a disposal of assets, it is subject to the normal standard of conduct required of a fiduciary. In the absence of any specific provision in the will providing for the consent of some third party to a sale of securities, a fiduciary must exercise "that degree of care and caution, skill, sagacity and judgment, industry and diligence, circumspection and foresight, that an ordinary discreet and prudent person would employ in like matters of his own." In re Ebert (Cook's Will), 136 N.J. Eq. 123, 40 A.2d 805 (Prerog. 1945); Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165, 47 A.2d 10 (Ch. 1946).
In a number of the exceptions we are here confronted with the exercise of judgment during the panic of the 1930s.
In a similar situation, the court said in In re Cross, 117 N.J. Eq. 429, 176 A. 101, at p. 433 (E. & A. 1935), as follows:
"The treacherous path that lay before the investor, whether trustee or otherwise, in the spring and summer of 1931 (when it is suggested *329 that the executors should have sold and reinvested) is apparent when, with the advantage of retrospection, we look upon the debacle that ensued. Favored forms of trust investment were sucked into the maelstrom  mortgage investments, corporate bonds, and even cash in bank. Following came the widespread apprehension of money inflation, in company with which was the doctrine, well received even in conservative circles, that participation in ownership equities was extremely desirable because of its proportionate share in the potential inflation of capital and earnings. However loudly it may now be said that people should have foreseen, most men of that degree of prudence and caution that we call ordinary did not foresee. Wisdom after the event is not the test of responsibility."
See also Pollack v. Bowman, 139 N.J. Eq. 47, 49 A.2d 40 (E. & A. 1946).
A trustee is obliged to do what any man of ordinary prudence and caution would, under like circumstances, have done. In re Ebert (Cook's Will), 136 N.J. Eq. 123, 40 A.2d 805 (Prerog. 1945); Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165, 47 A.2d 10 (Ch. 1946).
The foregoing principles are generally applicable to the particular exceptions hereinafter considered and are to be deemed a reason for the resulting determination.

III.
Neither Kathryn C. Wolford nor Gladys L. Reed are bound by any of the agreements between the Trust Co. and John R. Ditmars, Jr., and Katharine L. Ditmars.
The agreement of October 19, 1928, precludes the said John R. Ditmars, Jr., from succeeding wherever he refused to consent to a sale of securities.
The Trustee has argued that John R. Ditmars, Jr., is, in any event, precluded from questioning its conduct of the estate because of paragraph 5 of the agreement of September 24, 1935.
To dispose of this contention it is necessary to ascertain the effect of a release by contract. In order for such a release to be effective, the beneficiary must have had knowledge of all of the relevant facts that the trustee knew or should have known, and of his legal rights. Equity demands *330 of a trustee the fullest possible fairness and disclosure to a cestui que trust, and the burden of proof is on the trustee to show the fairness of the transaction. Equity will subject agreements of this type to the severest scrutiny and will permit them to stand only when the trustee affirmatively shows that the agreement was fair and advantageous to the cestui que trust and that there was no fraud, concealment, undue influence or unconscientious advantage. Restatement of the Law, Trusts, § 217; Scott on Trusts, § 217; 54 Am. Jur., p. 241, § 304; 65 C.J. 658, § 522.
I find, as did the Master, that the fairness and reasonableness of the agreement was not proven and that the Trustee did not make that disclosure of the facts and law required of it.
John R. Ditmars, Jr., is therefore not barred by paragraph 5 of the above agreement from questioning the conduct of the Trustee.
Having disposed of the preliminary questions, the plaintiffs' exceptions will next be considered in the order above set forth.
(1) To the Master's conclusion that he would not consider nor decide upon the right of the defendant Camden Trust Company, as executor, to sell certain securities which it sold while acting as executor, and to the Master's refusal to find that said defendant should be surcharged for the loss resulting from such acts.
(2) To the Master's conclusion that he would not consider nor decide upon the right of the defendant Camden Trust Company as executor to make a payment of $2,796.20 to the widow of the decedent.
(3) To the Master's conclusion that he would not consider nor decide upon the proper apportionment by the defendant Camden Trust Company as executor, between the life tenant and remaindermen, of certain interest and dividends received by the executor.
(4) To the Master's conclusion that he would not consider nor decide upon the duty of the defendant Camden Trust *331 Company as trustee to make certain that it received from the executors the proper assets for the trust estate, and to the Master's refusal to find that said defendant should be surcharged for the loss resulting from accepting for the trust estate improper securities and assets from the Executors.
I concur with the Master that this court assumed jurisdiction in this litigation only over the Trustee's accounts, and not over the prior accounts.
The bill of complaint herein was filed on April 24, 1941. In 1946 the plaintiffs applied to the Chancery Court for leave to amend in order to question the action of the executors in connection with the sale of certain stocks. The court, in that connection, said as follows (Ditmars v. Camden Trust Co., 138 N.J. Eq. 541, 49 A.2d 313 (Ch. 1946), at page 543; affirmed, 140 N.J. Eq. 420, 55 A.2d 13 (E. & A. 1947)):
"Now in 1946 the complainants petition this court for permission to amend the bill of complaint to enable them to challenge the propriety of a sale of certain shares of stock of Homestake Mining Company and of Hercules Powder Company made by the executors in the year 1926.
"The executors revealed the sale of the stock in their first account which was approved by the Camden County Orphans Court on December 7, 1928. Due to the litigation concerning the probate of the will, an administrator pendente lite was appointed whose account was likewise approved by the Camden County Orphans Court on December 7, 1928.
"After the execution of the settlement agreement and on March 7, 1930, the executors presented to the Camden County Orphans Court their final account which was approved on March 7, 1930. Those accounts were informative to all parties in interest that the shares of stock had been sold and converted into cash. Although the complainants in the present cause were parties to the accounting proceedings and represented by competent counsel, they did not interpose any objection or register any exception to the action of the executors in that particular. Nor is it intimated that the complainants were induced to refrain from so doing by means of any fraud or misrepresentation.
"Whether or not the decrees of the Camden County Orphans Court approving the accounts of the executors and of the administrator pendente lite are in such circumstances to be regarded as conclusive upon the complainants (see, for example, Pollack v. Bowman, Court of Errors and Appeals, 139 N.J. Eq. 47), or are not to be so regarded by reason of the progressive prosecution of the several appeals, is not *332 a pivotal factor in the determination of the present application. The proposed amendment will in effect introduce at this late date an additional and independent subject of controversy in the pending litigation. The fact that the executrix has died is also a circumstance of significance. To sanction at this time an amendment of such a nature so tardily requested would be manifestly indiscreet and inequitable. It comes too late. Vide, Cocheu v. New Jersey General Security Co., 111 N.J. Eq. 328; 163 Atl. Rep 128; Bristol-Myers Co. v. L. Bamberger & Co., 125 N.J. Eq. 306; 4 Atl. Rep. (2d) 685; Barton v. Long, 45 N.J. Eq. 841, 844; 14 Atl. Rep. 565; Hance v. Conover, 31 N.J. Eq. 505. The economic changes wrought by the passage of time, plus hindsight, often make perceptable the substance of a grievance which in foresight appeared to be unreal."
The objections now urged were not within the purview of the original bill of complaint nor were they affirmatively stated as specific exceptions to the account when filed. As a result, they were not within the confines of the matters referred to the Master for consideration. The reasons for refusing the amendment are applicable with as much force in these proceedings.
In addition, the several accounts as filed by the administrator and executor made a clear disclosure of the facts which the plaintiffs now seek to question under these exceptions.
For a decree on an account to estop an interested party from subsequently questioning the conduct of a fiduciary on the manner of his discharge of his stewardship, it must appear that he knew all of the facts, understood his legal rights, and acted deliberately in not objecting. All of these elements are here present.
In Liberty Title & Trust Co. v. Plews, 6 N.J. Super. 196, 70 A.2d 784 (App. Div. 1950), the court said at page 205:
"We recognize that there is a public policy in favor of the stability and finality of decrees and that cestuis may justly be held responsible for matters apparent on the face of the account."
See also Pollack v. Bowman, 139 N.J. Eq. 47, 49 A.2d. 40 (E. & A. 1946); Dickerson v. Camden Trust Co., 1 N.J. 459, 64 A.2d 214 (Sup. Ct. 1949).
*333 Both because of the plaintiffs' failure to raise these questions in their original suit and because the prior judicial approvals act as res adjudicata, the plaintiffs are barred from now raising these questions.
The conclusions of the Master, insofar as they concern the first four exceptions, are approved and confirmed, and the exceptions disallowed.

2

INTERNATIONAL MATCH CORPORATION.
To the Master's finding and conclusion that the Trustee should not be surcharged for the loss occasioned by reason of its failure either to sell the shares of stock of International Match Corporation as soon as it received them as Trustee, or to request the instruction of the court as to the course to be followed.
I am in accord with the reasoning of the Master insofar as his findings and conclusions regarding this stock are concerned, and his findings and conclusions are therefore here approved and affirmed and the exceptions thereto disallowed.

3
(6) To the Master's finding and conclusion that the Trustee acted properly in retaining a Toho Electric Co. bond until December, 1931, the date of the consent of the life tenant, and that John R. Ditmars, Jr., was barred from participation in any surcharge.
I am in accord with the reasoning of the Master insofar as his findings and conclusions are concerned regarding the retention of the Toho Electric Co. bond, and the barring of John R. Ditmars, Jr.. His findings and conclusions are therefore here approved and affirmed and the exceptions thereto disallowed.

*334 4
(7) To the Master's finding and conclusion that the Trustee acted properly in retaining the so-called German bonds until March, 1931, and that John R. Ditmars, Jr., was barred from any participation in any surcharge.
I am in accord with the Master's conclusions and findings that the Trustee acted in good faith, and exercised that degree of discretion, skill, and judgment required of it in deeming it advisable to hold said bonds until March, 1931, when it attempted to obtain Mrs. Ditmars' consent to a sale thereof.
However, as far as the conclusions and findings of the Master are concerned regarding the duty of the Trustee to attempt to obtain the consent of Mrs. Ditmars, for the reasons heretofore assigned I do not agree. The Trustee did everything which was required of it under the will. Mrs. Ditmars' refusal to consent to a sale, under the circumstances here present, exonerates the Trustee.
The exception of the Trustee is therefore allowed and the findings and conclusions of the Master reversed, and the Trustee is held not liable to a surcharge.

5
(8) To the Master's finding and conclusion that the Trustee acted properly in retaining the Chicago Rapid Transit Co. bonds until May, 1931, but that it should then have attempted to obtain Katharine L. Ditmars' approval of a sale.
I am in accord with the reasoning of the Master insofar as his conclusions and findings are concerned regarding the Chicago Rapid Transit Co. bonds, and his conclusions and findings are therefore here approved and affirmed, and the exceptions of both plaintiffs and defendants thereto are disallowed.

6
(9) To the Master's finding and conclusion in disallowing the exception that it was unnecessary and negligent to sell the Keystone Telephone Co. bond at a loss.
*335 I am in accord with the reasoning of the Master insofar as his conclusions and findings are concerned regarding the Keystone Telephone Co. bond, and his conclusions and findings are therefore here approved and affirmed and the exceptions thereto disallowed.

7
(10) Because the Master allowed interest on surcharges at 4% when he should have allowed 6%.
The exceptants argue that the Master erred in allowing interest on the items for which the Trustee was surcharged at 4% instead of 6%.
There is here absent any proof of bad faith or gross misconduct. Interest, under such circumstances, is allowed not as a penalty, but as a compensation to the beneficiaries so that they may be reimbursed as nearly as possible for the loss resulting from a failure of income. The beneficiaries are entitled, under the facts here present, only to such income as would, in reasonable probability, have resulted from a proper fulfillment of its duties by the Trustee. The Penna. Co. v. Gillmore, 142 N.J. Eq. 27, 59 A.2d 24 (Ch. 1948); Liberty Title & Trust Co. v. Plews, 142 N.J. Eq. 493, 60 A. 2d 630 (Ch. 1948); 6 N.J. Super. 196, 70 A.2d 784 (App. Div. 1950).
Under all of the circumstances, a 4% allowance was equitable and fair.
John R. Ditmars, Jr., however, advances the theory that because he borrowed monies from the Trust Co. for which his interest in the estate was pledged as collateral security and agreed to pay interest at the rate of 6% per annum upon such loans, the allowance of interest on the surcharge should also be at the rate of 6% per annum.
The Trust Co. advanced these sums to him in its individual capacity, at his special instance and request. He was free to borrow from any other source if he so desired, and either not have become obligated to the Trust Co. in the first *336 instance, or to have subsequently have paid it in full. Now, with the present litigation pending, he has repented of his bargain. Had there been no surcharge, it is difficult to conceive how he could have obtained any reduction in the contract rate of interest which he had agreed to pay and which he is now indirectly seeking.
He has cited Camden Trust Co. v. Cramer, 136 N.J. Eq. 261, 40 A.2d 601 (E. & A. 1945), and Fidelity, &c., Trust Co. v. Guaranty Trust Co. of N.Y., 140 N.J. Eq. 548, 55 A.2d 813 (E. & A. 1947), as authority for his position. In both of these cases the court held that a fiduciary owes undivided loyalty to the cestuis que trust, and that a fiduciary cannot subordinate the interest of the cestuis que trust to its own. There is not here present any such conflict of interest or subordination of interest as would move this court to increase the rate of interest as allowed.
I am in accord with the reasoning of the Master insofar as his findings and conclusions regarding the item of interest at 4% on the surcharges are concerned, and his findings and conclusions are therefore here approved and affirmed and the exceptions thereto disallowed.

8
(11) To the Master's finding and conclusion that the Trustee should not be surcharged for commissions taken without prior allowance by the court.
(12) To the Master's finding and conclusion that the rate of Trustee's commissions was reasonable.
(13) To the Master's finding and conclusion refusing to allow the withdrawal of the waiver alleged to have been made by Mr. Scammell concerning the above referred to exceptions which I have designated as 11 and 12.
The exceptions relate to commissions on income deducted by the Trustee prior to an allowance by the court. They cover the periods (1) March 31, 1930, to December 22, 1933, during which period commissions were deducted at 5%; (2) June *337 25, 1934, to April 1, 1941, during which period commissions were deducted at 2%, and (3) on November 29, 1941, the Trustee deducted a sufficient further sum of money to make a total commission of 5% from June 25, 1934.
Subsequent to July 1, 1939, the effective date of R.S. 3:11-2, the Trustee was entitled to deduct a 5% commission on income as the same was received by it. The exceptants, however, complain that because of the deduction during and for the period antedating July 1, 1939, the Trustee should be surcharged with the full amount thereof.
By stipulation of counsel, exceptions relating to the deduction of such commissions were withdrawn before the Master. This stipulation is binding upon the parties and cannot now be raised. Decker v. Smith & Co., 88 N.J.L. 630, 96 A. 915 (E. & A. 1916).
Present counsel for John R. Ditmars, Jr., now argues that either his original counsel did not intend the effect accorded by the Master, or that it was a stipulation as to law, which is in and of itself improper.
I fail to see how any intention could have been accorded this stipulation other than the interpretation given by the Master, i.e., a complete waiver.
Exceptants had the right, prior to the stipulation, to press the exception or to waive any claim they might have. It could in no event be deemed a stipulation of law.
In any event, the remaindermen, Gladys L. Reed and Kathryn C. Wolford, had no interest in the income during the lifetime of Katharine L. Ditmars.
Paragraph Fourth, Section A of the will provided as follows:
"(a) To invest the same and to pay the income arising therefrom to my wife, Katharine L. Ditmars, during the period of her natural life."
Katharine L. Ditmars died on February 26, 1941.
These commissions having been deducted from income, said exceptants, as remaindermen, under the specific *338 provision of the will sub judice, had up to that time no interest in the income.
Even though it be conceded that John R. Ditmars, Jr., by virtue of his agreement with Katharine L. Ditmars dated October 19, 1928, had some interest in the income, the receipt by him of the monthly statements, showing deductions for commissions, and his failure to object to the deduction of commissions (his apparent acquiescence therein) serves now to estop him to the extent of the commissions so deducted.
There being here present no wilful wrong, fraud or misconduct, the Trustee is entitled to commissions at the rate of 5%. Penna. Co. v. Gillmore, 142 N.J. Eq. 27, 59 A.2d 24 (Ch. 1948); Liberty Title & Trust Co. v. Plews, 142 N.J. Eq. 632, 61 A. 2d 297 (Ch. 1948); affirmed, 6 N.J. Super. 196, 70 A.2d 784 (App. Div. 1950); Dickerson v. Camden Trust Co., 140 N.J. Eq. 34, 53 A.2d 225 (Ch. 1947).
I am in accord with the Master insofar as his conclusions and findings regarding these exceptions are concerned, and his conclusions and findings are therefore here approved and affirmed and the exceptions thereto disallowed.

9
(14) To the Master's refusal to find that for various sums allegedly paid to John R. Ditmars, Jr., there were (1) no vouchers, or (2) not in fact paid to him, or (3) all payments of interest on his loan from the Camden Trust Company were usurious.
I am in accord with the reasoning of the Master insofar as his conclusions and findings concerning the vouchers and payments to John R. Ditmars, Jr., are concerned, and such conclusions and findings are therefore here approved and affirmed, and to that extent these exceptions are disallowed. The question of usury is hereafter treated.
The defendants' exceptions will next be considered

*339 1
(1) To the Master's finding and conclusion that the Trustee should be surcharged for failing to sell the Equitable Office Building Corporation stock.
Although I do not agree with the Master's general findings and conclusions as to the effect of the provision requiring the consent of Katharine L. Ditmars before a sale of any securities could be had, I am in accord with the reasoning of the Master insofar as his findings and conclusions are concerned, that the Equitable Office Building Corporation stock should have been sold in March, 1930, and that its failure to attempt to obtain her consent makes it liable by way of surcharge, and his findings and conclusions are therefore here approved and affirmed and the exceptions thereto disallowed.

2
(2) To the Master's finding and conclusion that the Trustee should be surcharged for failing to sell the "German" bonds.

3
(3) To the Master's finding and conclusion that the Trustee should be surcharged for failing to recommend and to actually sell the Chicago Rapid Transit Co. bonds.
Trustee's exceptions 2 and 3 have already been disposed of. See points 4 and 5 above.
Having disposed of the exceptions, it becomes necessary to consider the remaining issues.

1
Usury of the defendant in its individual capacity, both as an affirmative claim of John R. Ditmars, Jr., and as a defense to the Trust Co.'s action on his notes discounted by it.
Plaintiff John R. Ditmars, Jr., by way of affirmative suit, seeks the recovery of money allegedly paid as interest on his *340 obligations to the Trust Co. in its individual capacity, on the ground that the interest so charged was usurious, and as well pleads usury as a defense to the action of the Trust Co. in its individual capacity, based upon certain promissory notes of the said John R. Ditmars, Jr., discounted by it.
The former of these two suits is predicated upon R.S. 31:1-4, which reads as follows:
"Any borrower of money or other personal property may by a bill in chancery against the lender compel him to discover, upon oath, the money or other personal property really lent, and all agreements, devices, shifts, bargains, contracts and conveyances which shall have passed between them relative to such loan, or the repayment thereof, and the interest or consideration for the same. If thereupon it shall appear that more than lawful interest was taken or reserved the lender shall be obliged to accept his principal money, or the personal property or the value thereof, without any interest or other consideration, and to pay costs."
The latter of these two actions is predicated upon R.S. 31:1-3, which reads as follows:
"In all actions at law or suits in equity to enforce any note, bill, bond, mortgage, contract, covenant, conveyance, or assurance, for the payment or delivery of any money, wares, merchandise, goods, or chattels lent, and on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of action or suit, may be recovered, and no more; and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only."
The promissory notes here in controversy were all demand notes, dated as follows: (1) September 30, 1933, for $25,000; (2) September 30, 1933, for $9,326.50, and (3) September 25, 1935, for $3,000. They had been reduced by payment to the following amounts: (1) $17,828.42; (2) $6,177.48 and (3) $2,226.78.
The alleged usury arises in the following manner: (a) interest paid to the Trust Co. in its individual capacity at *341 the rate of 6% per annum from June 21, 1935, on the sum of $250 allegedly loaned to John R. Ditmars, Jr., but which he claims he never received; (b) deduction of the sum of $105 by the Trust Co. on two occasions when there was only a single item of $105 due to it in its individual capacity; (c) computation of interest on all of the obligations of John R. Ditmars, Jr., held by the Trust Co. in its individual capacity at the rate of 6% per annum computed on the basis of 360 days for a year.

A.
We may disregard the first of the above three, since it was proven at the time of trial and is now admitted by John R. Ditmars, Jr., that he actually did receive the $250 on June 21, 1935, and delivered his promissory note in that amount on that date. This obligation was subsequently paid in full.

B.
In Sussex Bank v. Baldwin and Shipman, 17 N.J.L. 487 (Sup. Ct. 1840), the court said at page 504:
"But I apprehend that it is not a sound rule of construction to adhere to the strict letter of a statute in opposition to the intent and spirit of the law which is as clear to the mind of every intelligent and rational man as the letter is to his external senses. The law never intended to punish with heavy penalties him who never designedly intended to violate it; and although it is true as a general principle that an act in violation of a statute is indicative of a motive to violate, and unexplained, is legal and conclusive evidence of such motive, yet the party charged with such an act may show that it was done in good faith and with an honest and legal purpose, which in reason and justice should be his protection against penalties. It will not be denied, for cases abundantly prove it, that when in the computation of interest, a mistake is made in figures, whereby more than legal interest is reserved, that such mistake will not avoid the contract on the ground of usury. And I can perceive no difference between the cases of a miscalculation and the innocent adoption of an incorrect or erroneous principle of computation where the fact is as clearly established in the one case as in the other. In this case the witness who had no interest in the matter, testifies that the calculation of *342 the interest was his own act, done without any special instructions from his principal, that he made his calculation according to a common, general and universal rule adopted by all banks, and that he intended to take only at the rate of six per cent. interest and no more. Here we have a complete and direct denial of any intent to violate the statute confirmed by the natural and rational construction of the act itself, by which thirteen cents was reserved more than the statute allowed on the sum of four hundred and ninety-six dollars and sixty-seven cents."
The $105 item was quite patently the result of an error. The error very clearly appeared upon the statement sent to John R. Ditmars, Jr., covering the period from April 1, 1936, to May 1, 1936. He made no complaint until the inception of the present suit in 1941 nor did he during this period make any inquiry concerning the charge. The error was corrected by the Trustee voluntarily and the said John R. Ditmars, Jr., was given due credit. I am satisfied that this was an unintentional mistake and so find as a fact. The fact that the resulting interest was in excess of 6% per annum through mistake and not intent gives the said John R. Ditmars, Jr., no right to an affirmative action nor a defense for usury, especially where, as here, the Trustee rectified its error when it was called to its attention.

C.
The gravamen of the complaint that the method employed by the Trust Co. in its individual capacity in calculating interest resulted in the extraction of a usurious rate, finds its foundation in the admitted fact that until April 1, 1941, the Trust Co. computed interest at 6% on the basis of 360 days to a year instead of 365 days.
The said John R. Ditmars, Jr., seeks to recover the sum of $21,330.31 interest actually paid and to have that amount deducted from the principal balance of the loan.
It was apparently the custom of the Trust Co. to compute interest every 90 days, and to charge John R. Ditmars, Jr., on a "quarter annual" basis.
*343 It was admitted by the Trust Co. and its several employees that interest was charged as alleged by the plaintiff. The employees of the Trust Co. testified that as far back as they could remember, interest had been charged by the Trust Co. on all of its loans in this manner, using Breban's Interest Tables. The testimony of these witnesses, predicated upon their own personal experience with the Trust Co., covered a period of from 1923 to date. In a letter of April 10, 1945, Mr. McCarter, counsel for John R. Ditmars, Jr., called this matter to the attention of the Trust Co., which immediately credited the said John R. Ditmars, Jr., with the sum of $296.39, representing the alleged overpayment of interest here involved.
At the outset, it is to be noted that the alleged usury is not founded upon the bargain or contract which admittedly called for interest at the legal rate of 6% per annum, but rather upon the method employed by the defendant in computing that interest. The contract is legal on its face. Therefore, we are not concerned with the bargain or agreement as such but rather with the actual charge as made.
Where the usury is not apparent on the face of the contract, the intent must be gathered from the circumstances of the case. 55 Am. Jur. 349.
It is basic that in order to sustain an action or defense predicated upon usury there must be an intention to charge interest at a rate in excess of the statutory maximum.
In Dunlap v. Chenoweth, 88 N.J. Eq. 496, 104 A. 822 (Ch. 1917); affirmed, 90 N.J. Eq. 601, 106 A. 890 (E. & A. 1919), the court said, at page 499:
"One of the four essential allegations of the defence of usury is that the contract for the loan of money was made between the parties, with the intent to violate or evade the statute against usury. Kase v. Bennett, supra. The further allegation
`that the said bond or obligation made upon the contract as aforesaid, between the said Horace F. Nixon and these defendants, for the loan of money and the bond and mortgage set forth in the said bill of complaint were given in pursuance of the agreement above set forth, with corrupt intent to violate and evade the statute against usury,'
*344 was intended to supply another required averment, viz., that the bond and mortgage were given in pursuance of the corrupt intent that influenced the contract for the loan. This, too, is faulty, because it assimilates the infirmities of the previous insufficient allegation of a corrupt bargain upon which it is predicated. Combined, the allegations do not supply the deficiencies."
See also Sussex Bank v. Baldwin and Shipman, supra.
An overcharge resulting from mistake is not sufficient to afford the borrower the statutory remedy. See Dunlap v. Chenoweth, supra; Sussex Bank v. Baldwin and Shipman, supra.
Usury must be proved beyond a reasonable doubt and the court may consider the question of whether the charge of usury is made in good faith or as an expedient seized upon to escape liability. Stein v. Wittmer, 117 N.J. Eq. 535, 176 A. 783 (E. & A. 1934); Norton v. Nathanson, 85 N.J. Eq. 409, 97 A. 166 (Ch. 1915); affirmed, 86 N.J. Eq. 433, 99 A. 1070 (E. & A. 1916).
There is a dearth of reported decisions in New Jersey on the precise point here involved. The only reported case which nearly approaches the problem is Sussex Bank v. Baldwin and Shipman, supra, which in effect concludes that an error in computation of interest without an intent to charge more than the statutory rate does not constitute usury.
The testimony here demonstrated that the employees of the Trust Co. were not expressly directed to employ that method of computing interest.
I find as a fact that the Trust Co.'s employees so computed interest in good faith and not as a cloak for usury; that they had no intention of making a usurious charge.
The generally recognized commercial custom of banks in New Jersey to so compute interest on short term obligations amounts to an interpretation of the statute. The interest here was computed every ninety days. As in the matter of deducting interest in advance, there has existed for years a practical interpretation of the Usury Act. Columbia Life Ins. Co. v. Withers, 121 N.J.L. 54, 1 A.2d 436 (E. & A. 1938). The existence of such a custom of computing interest, *345 together with the other evidence herein adduced, demonstrates that the Trust Co. did not intend to violate the statute but, if there was a violation, it was committed in error.
I find also that not only was usury not proved beyond a reasonable doubt, but that the plea of usury was not made in good faith, but as an expedient to avoid liability.
I will therefore dismiss John R. Ditmars, Jr.'s, affirmative suit based of usury, and his answer to the Trust Co.'s suit on its promissory notes.
It follows that John R. Ditmars, Jr., has failed to sustain his claim of usury, both as an affirmative and a defensive action.

2

STATUTE OF LIMITATIONS AS A DEFENSE TO TRUST CO.'S ACTION ON THE NOTES OF JOHN R. DITMARS DISCOUNTED BY IT.
John R. Ditmars, Jr., has pleaded the Statute of Limitations as a bar to the action of the Trust Co. upon the first two above-referred to promissory notes.
These notes were dated respectively January 30, 1933, and September 30, 1933. Action by the Trust Co. was commenced on April 23, 1941, on both notes.
The Trust Co., in answering, has alleged (1) that by assignments dated June 6, 1930, and September 24, 1935, it was authorized by the said John R. Ditmars, Jr., to apply the income payable to him to the payment of interest and the reduction of principal coming due on said obligations; (2) the agreement of September 24, 1935, obligated it not to demand payment of said notes for a period of five years thereafter; (3) by virtue of the letter of George R. McCarter dated April 10, 1941, and the letter of John R. Ditmars, Jr., dated April 18, 1941, the validity and existence of the obligations was recognized.
The Trust Co. credited the first payment on account of the principal on the former of the above notes on January 24, *346 1939, and the last payment on April 2, 1941, and credited the first payment on account of principal on the latter of the above notes on December 18, 1937, and the last payment on April 2, 1941. Suit was commenced on April 26, 1941.
John R. Ditmars, Jr., assumes the position that the payments made on account are ineffectual to toll the running of the statute because they were not made by him personally, and in any event, that the Trust Co. was not bound to refrain from demanding payment of the debts for five years from September 24, 1935. It is conceded that no payments were made "personally" by John R. Ditmars, Jr.
The first question is whether the running of the statute has been tolled by the payments made on account thereof by the Trust Co.
Although the agreement of September 24, 1935, has heretofore been held not to act as a bar against the suit by John R. Ditmars, Jr., in relationship to the conduct of the Trustee, it is here held valid and effectual in its other provisions. There was adequate consideration for the remaining reciprocal covenants and agreements.
The agreement provides in part as follows:
"The Bank agrees that so long as interest hereafter accruing on the existing principle indebtedness of John R. Ditmars and on the said additional loan of $3,000.00 shall be paid when demanded, payment of no part of the indebtedness of Ditmars to the Bank, except interest hereafter accruing, shall be demanded prior to five years from the date hereof; the Bank shall nevertheless have the right to apply any surplus income on the trust hereinafter referred to estate remaining after paying all current interest on Ditmar's total principal indebtedness, first to reduction in whole or part of the arrears of interest on such indebtedness and thereafter to the reduction and payment of said indebtedness. Ditmars shall have the right to pay any or all of the said indebtedness at any time prior to the said five years from the date hereof.
"3: Ditmars does hereby affirm his assignment to the said Bank dated June 6, 1930, and in confirmation of the same does hereby assign, transfer and set over all his right, title and interest in and to the estate of the said John R. Ditmars, deceased, also does hereby assign, transfer and set over any and all sums due and to grow due to him under and by virtue of a certain agreement in writing, dated the nineteenth day of October, 1928, and a certain supplemental agreement in writing dated May 11, 1934, between him, the Bank, as executor of *347 John R. Ditmars, deceased, and Katharine L. Ditmars, as collateral security for the payment of all indebtedness of Ditmars to the Bank, including the above mentioned additional loan of $3,000, or any additional loans which may be made to him at any time by the Bank, together with any and all interest thereon, and does hereby authorize, empower and direct the Bank as trustee of the estate of the said John R. Ditmars, deceased, to use and apply any and all money now due or which may hereafter become due to Ditmars in liquidation and settlement of the said indebtedness loan or loans, together with any and all unpaid interest thereon. It is understood and agreed, however, that Ditmars shall be entitled to receive thirty days' notice of the time and place of the sale of any of the aforesaid collateral security. Such notice may be given by registered mail, addressed to Ditmars' post office address as known to the Bank at the time of giving notice.
"4: Ditmars agrees that until the expiration of five years from the date hereof he will take no steps by way of legal proceedings or otherwise to compel the Bank to make good any loss of the Trust Estate or to surcharge the Bank's account as trustee under the will of John R. Ditmars, deceased, by reason of the Bank's having invested funds of the trust estate as aforesaid in bonds of Leeds & Lippincott Company; but it is also agreed that upon the expiration of five years from the date hereof Ditmars shall be free to exercise any and all rights and remedies which by reason of the Bank's investing funds of the trust estate in bonds of Leeds & Lippincott Company he heretofore has had and but for the execution of this agreement would have. It is also agreed that should the loan of Ditmars be called in advance of five years from the date hereof, then upon the calling of such loan he shall in like manner be forthwith free to exercise any and all such rights and remedies, only, however, if the said Leeds & Lippincott bonds shall then be in the trust estate and shall be in default in interest."
The several paragraphs of the agreement must be read together.
By virtue of the terms of said agreement, the principal of the several obligations of John R. Ditmars, Jr., could not become due and payable (subject to the continued payment of interest) until January 30, 1939, and September 30, 1939, respectively. This is the earliest call date had there been an immediate default in interest. John R. Ditmars, Jr.'s, contention that the agreement was ineffectual to postpone the maturity of the notes for any period is without foundation. The interest having been paid, there was no default which would have permitted the Trust Co. to demand payment of the principal. The statute has therefore not run.
*348 In any event, John R. Ditmars, Jr., relies upon the fact that because the payments were not made by him personally the running of the statute was not tolled, citing DeRaismes v. DeRaismes, 70 N.J.L. 15, 56 A. 170 (Sup. Ct. 1903); affirmed, 71 N.J.L. 680, 60 A. 1133 (E. & A. 1905). It is true that the cited case holds that an acknowledgment or promise to defeat the operation of the statute, where the time has run, must be in writing, signed by the party to be charged thereby, and that an acknowledgment or promise by an agent of the debtor is ineffectual to accomplish such purpose.
However, Ballantine & Sons v. Macken, 94 N.J.L. 502, 110 A. 910 (E. & A. 1920), states the rule concerning payment on account prior to the expiration of the statute, as follows:
"The rule is well settled that to arrest the running of the statute before its expiration, the part payment of the indebtedness must be the voluntary act of the debtor, or made in pursuance of his consent or direction. Richardson v. Thomas, 13 Gray (Mass.) 381; Brown v. Latham, 58 N.H. 30; Brooklyn Bank v. Barnaby, 197 N.Y. 210."
The written authority to the Trust Co. sub judice was express. It was authorized to make payments both on account of interest and principal from monies due or coming due to John R. Ditmars, Jr., from his father's estate. The agreement created an express agency and not one in invitum. The payments were therefore made on behalf of John R. Ditmars, Jr., by his express direction, in writing. This is a sufficient payment to toll the running of the statute.
It follows that the Statute of Limitations is no defense to the Trust Co.'s action on the promissory notes.
It becomes unnecessary to consider the effect of the letters referred to in (3) hereof.

3
John R. Ditmars, Jr., further alleges that the mortgage which he gave to the Trust Co. on the so-called "Dilks" property was given as security for future advances and not *349 as security for past loans, and that no further monies were advanced after the date of such mortgage and there was nothing due thereon.
I find as a fact that the mortgage was given for the purposes stated by the Trust Co. and that the conduct and correspondence of John R. Ditmars, Jr., and his counsel, prior to this litigation, substantiate this position.
John R. Ditmars, Jr.'s, action for the recovery of $1,265.26 is dismissed.

4
The amount of the balance due John R. Ditmars, Jr., or the Camden Trust Company is a matter of mathematical calculation which will await the presentation of a final judgment consistent with the foregoing conclusions.

5
Plaintiffs bottom their demand for the removal of the Trustee upon the theory that the Trustee was disloyal to the remaindermen and influenced by its own interest. With this position we are not in accord.
The facts present in Camden Trust Co. v. Cramer, 136 N.J. Eq. 261, 40 A.2d 601 (E. & A. 1944); Fidelity Union Trust Co. v. Guaranty, &c., Trust Co., 140 N.J. Eq. 548, 55 A.2d 813 (E. & A. 1947); and Taylor v. Errion, 137 N.J. Eq. 221, 44 A.2d 356 (Ch. 1947); affirmed, 140 N.J. Eq. 495, 54 A.2d 224 (E. & A. 1947), cited by plaintiff, are here absent, and said cases are not applicable.
I find as a fact that the Trustee was loyal to its duties and obligations and acted in good faith, although it was in some instances guilty of failing to exercise that degree of care required of it.
This demand for relief is denied.
Judgment will be entered consistent with the foregoing.