FIDELITY UNION TRUST COMPANY, trustee, &c., complainant-respondent,

*v.*

GUARANTY TRUST COMPANY OF NEW YORK et al., defendants, Helen T. Johnson, guardian *ad litem,* &c., defendant-appellant.

[Argued February 6th, 1947. Decided April 24th, 1947.]

Mr. *John A. Laird,* for the appellant.

*Messrs. Hood, Lafferty & Emerson (Mr. William G. Hart, Mr. Charles Danzig* and *Mr. Sigurd A. Emerson),* for the respondent.

PER CURIAM.

This appeal brings up a decree of the Court of Chancery adjudging that one-half of the residuary estate of Virginia W. Johnson, deceased, was vested in Carroll W. Johnson on the death of his brother, Wilbur W. Johnson. The decree determines other questions submitted to the court in said cause, *135 N. J. Eq. 222.* The only appeal is by Helen T. Johnson, guardian *ad litem* of infant defendants Virginia Taft Johnson, Daniel Carroll Johnson and Collette Johnson, children of Carroll W. Johnson and Helen T. Johnson, from so much of the decree as "adjudges that the defendant Carroll W. Johnson had a vested interest as to one-half of the residuary estate of Virginia W. Johnson, deceased, subject to divestment in the event that he predeceased the life tenants, Madge J. McEwen and Rebecca R. Wightman, and that the said Carroll W. Johnson had a vested interest, not subject to divestment, as to the half interest in the estate of said Virginia W. Johnson, coming to him through the decease of his brother, Wilbur Johnson." Appellants assert that "Carroll W. Johnson had only a contingent interest in the estate of Virginia W. Johnson, and that the infant defendants should take as remainderman if Carroll W. Johnson predeceases the life tenants; and this is true both as to whatever interest Carroll W. Johnson had in said estate directly under the will of the testatrix or through the decease of his brother Wilbur Johnson."

Virginia W. Johnson died on or about April 18th, 1919, and by the terms of her will the income from a trust set up thereby was to be paid to three of her sisters so long as they or the survivor of them should live. It then provides:

"c: In further trust, to divide, distribute and pay over, upon the death of the survivor of my sisters aforesaid, the *corpus* of my said estate to my children, Carroll W. Johnson and Wilbur W. Johnson, share and share alike. Should either of my said sons die before the time of distribution appointed in this subparagraph 'c' leaving lawful issue him surviving, then I direct that the share of the deceased son be divided equally among his children, or shall go to his child, if there be but one. If either of my said sons shall die without lawful issue the other of them, if living, or if he be dead leaving lawful issue, then his issue shall take the share of such deceased son."

Wilbur W. Johnson, a co-executor and co-trustee under the will, and one of the remaindermen named in paragraph "c" of the third article thereof, died on October 1st, 1933, leaving no issue him surviving. At the time of the filing of the bill of complaint herein·the three sisters of testatrix were living but, as appears from the record, one died on May 13th, 1943.

On March 31st, 1932, Carroll W. Johnson and Wilbur W. Johnson were indebted to the Essex County Trust Company and by written instrument sold and assigned to the Essex County Trust Company all of their rights and interests in their mother's estate. On September 30th, 1935, Fidelity Union Trust Company purchased the assets of the Essex County Trust Company, including the aforesaid assignment. The Essex County Trust Company was relieved and discharged from its duties as trustee on November 10th, 1936, and Fidelity Union Trust Company was appointed in its stead.

Later the Guaranty Trust Company of New York and Lester Gelinas, as trustees under the last will and testament of Carrie Kaufmann, deceased, Allen L. Kaufmann and Doris K. Thompson, recovered a judgment against Carroll W. Johnson and sought to have execution of the claimed vested remainder of said Carroll W. Johnson under his mother's will. The bill was filed by the Fidelity Union Trust Company as trustee to have the Court of Chancery determine whether the interest of the complainant as a creditor of Carroll W. Johnson conflicts with its duties as trustee under the aforesaid will; to construe the third article of the will of Virginia W. Johnson and declare the rights of Carroll W. Johnson and of

the complainant and defendants thereunder; and to restrain the Guaranty Trust Company of New York and associates from proceeding further until the time of settlement of the estate in question.

At the time of the death of testatrix none of the infant defendants was in being.

In the absence of express language it is the duty of the court to determine what the testatrix' purpose was from the entire will.

In the instant case the will provides "should either of my said sons die before *the time of distribution*" (italics inserted), then his share is to go to his child or children, or failing children to the other son, or, if he, the other son, be dead, then to his issue. The obvious purpose of testatrix was to give to her son or sons, if living at the time of distribution, her estate. If both sons died before the time of distribution, their child or children were to take. But the language of subparagraph "c" makes it clear that there was to be no absolute vesting of interest until the time of distribution. If Carroll survives the last life tenant then he takes the entire estate, his own interest and Wilbur's interest. If both die before the time for distribution, then the lawful issue of both or one, as may be, take the residue.

This is the clear meaning of the decision in *Carter* v. *Bugbee, 92 N. J. Law 390,* where Chief-Justice Gummere, speaking for this court, said, "Where the time is annexed, not to the payment, but to the gift itself—as when it is to the beneficiary 'when' he arrives at a certain age, or 'if' he is living at the time of the happening of a future event—the gift does not vest unless and until he attains that age, or unless he survives the happening of the future event. It is made upon condition; and if the condition be not fulfilled—that is if he does not attain the prescribed age, or live until the happening of the prescribed event, the gift never vests. *Gifford, Administrator,* v. *Thorne, 9 N. J. Eq. 702; Clayton* v. *Somers, 27 N. J. Eq. 230.* The right of the present beneficiaries depended, not upon the death of the settlor, which, of course, was certain to occur, but on whether they survived him, an

event which was not only uncertain at the time of the execution of the deed of trust, but remained in uncertainty until the death of the settlor. Until that event occurred, therefore, there could be no transfer of the title to the estate in remainder, because not until then could the parties entitled to receive the gift be ascertained."

In *Teets* v. *Weiss, 47 N. J. Law 154,* for this court,. it was said, "In *Vanderburgh* v. *Hollinshead, 1 McCart. 32,* Chancellor Green said that when the limitation over of the estate upon the death of a devisee is to the surviving children of such devisee, a contingent estate is created, and if a child should die before the devisee for life, the estate passes to the survivors. Perhaps the principle is more clearly stated in the syllabus to that case, prepared by the Chancellor, viz.: 'The rule is that when an interest is given to one for life, and after his death to his surviving children, they only can take who are alive at the time the distribution takes place, and the estate is therefore contingent.' "

In *Stevens* v. *Edson, 32 N. J. Eq. 105,* Vice-Chancellor Leaming said: "In this state the rule of construction which controls cases of this class is too firmly established to permit further consideration. Briefly stated, that rule is that where the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention, refer to the termination of the particular estate," citing cases.

The holding of the decree under review would result in a situation where that portion of the testatrix' residuary estate which came to Carroll W. Johnson indirectly through his brother would be vested and that portion which came to him directly under the will would be subject to divestment. There is nothing in the will which would indicate any such intention upon the part of the testatrix, but rather the contrary appears.

We conclude, therefore, that the testatrix intended, and expressed such intention by the language used, that the remainder of the estate should go to her two sons, if both were living at the time of distribution, or to one son at such time if the other died before such event without issue, and that

if both sons died before such time, the residue was to go to the child or children of such deceased sons, or the children of one son, if the other died without issue.

The decree under review will be reversed in so far as it holds that the interest of Wilbur W. Johnson in his mother's estate vested in Carroll W. Johnson upon the death of Wilbur Johnson, and is no longer subject to divestment.

The trustees named in the will to execute the trust were Mrs. Virginia W. Johnson's two sons, Carroll and Wilbur, and the Essex County Trust Company. On March 31st, 1932, Carroll and Wilbur were indebted to Essex in large sums of money. To secure that antecedent indebtedness and any other debts that might thereafter become owing, those men, on that day, joined in executing and delivering to Essex an assignment of all their rights and interest in and to the estate of their mother. We do not discover the extent of Wilbur's indebtedness at that moment, although on July 3d, 1933, it was $68,336.55. Carroll, on March 31st, 1932, owed the sum of $32,988.28 and received further loans. The Fidelity Union Trust Company then owned three-fourths of the capital stock of Essex. In 1935 Fidelity, being then the owner of all the capital stock of Essex, exchanged that stock for all of the assets of Essex subject to outstanding liabilities and, further, assumed and agreed to pay all of the legal obligations of Essex. The Vice-Chancellor's opinion states that Fidelity bought the assets "for a valuable consideration," which is something of a euphemism; it took over the assets and debts of its subsidiary, turning back to the trustees in dissolution the capital stock which then, so far as appears, became worthless. The following year the Essex County Orphans Court formally discharged Essex and substituted Fidelity as trustee under Mrs. Johnson's will. On October 21st, 1941, Fidelity filed the present bill of complaint. It was then, in effect, as it soon thereafter became in fact, the sole trustee. Wilbur's trusteeship had been ended by death, and Carroll, while living, was not participating and did not join in the bill as a complainant. He was brought in as a defendant and was, on October 15h, 1942, suspended as trustee by order of the Essex County Orphans Court.

The statement of assets submitted by Fidelity from its books as of February 3d, 1944, shows the total value of the trust fund to be $77,541.36. The bond of Fidelity, when it was appointed trustee, was fixed at $90,000, which is consistent with such a volume of assets. The total indebtedness of Carroll to Fidelity, at the time of the hearing on the bill in Chancery, was $45,735.15. The immediate incident which provoked the filing of the bill was the attempt of Guaranty Trust Company to impress upon the trust fund for ultimate payment a judgment debt of $8,916.15 owing to it by Carroll. The threat by that claim to the remainder interest was relatively slight when compared with the hostile claim arising out of Carroll's debt which the trustee in its individual capacity sought to establish, not only as superior to the Guaranty Trust Company's claim, but as superior to any remainder interest. Not only so, but the bill included a prayer that Chancery should "further construe the said written assignment made and executed by the said Carroll W. Johnson and Wilbur W. Johnson to Essex County Trust Company on March 31st, 1932, which assignment has been further assigned by said Essex County Trust Company to the defendant Fidelity Union Trust Company, and may adjudge, determine and declare the respective rights, status, priorities and legal relations of the complainant and the defendants in the residuary estate of said Virginia W. Johnson, deceased."

The decree determined that when Wilbur died his share in the contingent remainder became vested in Carroll. Therefore, the bill carried much greater significance to the Fidelity and to the remainder interests than just with respect to Carroll's original share; it went also to Wilbur's share and to his debt. The debt due from Wilbur's estate to Fidelity (because of the assignment from Essex) at the time of the hearing in Chancery was $39,752.03. The total debt of the two brothers to Fidelity at the time of the hearing was $85,487.18. Therefore, the claim which Fidelity sought to establish and which it did by the decree in Chancery establish, hostile to the fund of which it was the trustee, was greater than the entire amount of the fund. It completely wiped

out the remainder interest so far as Wilbur's share is con-cerned. Now whether or not that was an unjust result de-pended upon what the will meant with regard to remainder-men. In theory, the trustee should have been in equipoise of mind on that point, governed only by its sense of justice and its advice upon the law; but its interest was such that it could not be in equipoise. It was weighted down by its own interest, an interest in violent conflict with such a legal status as we have found to exist; weighted to an extent that, in our opinion, was wholly inconsistent with a retention by Fidelity of its trusteeship. The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty. *2 Scott on Trusts, § 170.* How could Fidelity with so large a personal stake be loyal to the remaindermen if the remaindermen were other than Carroll and Wilbur Johnson through whom it claimed?

The trustee was not, we think, guilty of bad faith, although suspicion was conspicuously invited in 1932 when Essex, on notice that the will was not explicit as to remaindermen, tied its own fortunes to the proposition that Wilbur and Carroll were entitled and again, in 1936, when Fidelity, knowing the fact and the magnitude of its claim antagonistic to the in-terest of potential distributees, and not being an appointee of the testamentary donor, sought and accepted the designa-tion by the court as substituted trustee. But, whether in good faith or bad faith, no trustee should retain its function when it is preparing to battle, in its individual behalf, for the entire *corpus* of the fund which it, as fiduciary, should be impartially guarding for those who under the law are entitled. Every duality of interest does not disqualify a trustee. It would be difficult, perhaps impossible, to phrase, in precise language, a rule that would universally hold. But under the circum-stances of this case we think that Fidelity was plainly under the duty to choose whether it would serve itself or its *cestuis;* and if, as we think it could well have decided, itself, then to resign its trusteeship so that it might deal with the trust at arm's length.

The complainant, in its bill, frankly prayed for instructions as to whether there was a conflict of interest. Chancery de-

cided that there was not; we think that there was. The question was not raised by the petition of appeal, although it is now urged by the appellant; but much more is at stake than the decision of the present litigation. The case has attracted attention; the finding of the opinion of Chancery with which we do not agree is printed in our reports; it is of concern to *cestuis que trust*, fiduciaries, courts and the public generally that our view differing from that expressed by Chancery should be made known. Since the main argument this issue has twice been reargued and rebriefed, at considerable length, and the state of the case, shortened in its original composition, has been reprinted with a full record. A question of public policy is involved, and such a question, along with that of jurisdiction, rises above procedure and should be looked after by the courts even when the party who might have presented it is silent. *Cf. State* v. *Shupe, 88 N. J. Law 610; State* v. *Snell, 96 N. J. Eq. 299; State* v. *Mohr, 101 N. J. Eq. 230; Dickinson* v. *Plainfield, 116 N. J. Eq. 336; Massachusetts National Bank* v. *Shinn, 163 N. Y. 360; 57 N. E. Rep. 611; Penrose* v. *Absecon Land Co., 94 N. J. Eq. 436; 4 C. J. S., Appeal and Error, § 242.* Here the question was raised below by the complainant itself, was tried out and was decided, erroneously as we find, by the decree before us for review.

The situation was not met by the avowal of self-interest by the trustee and the appointment of a guardian *ad litem* for the minors. A trusteeship is not a piecemeal undertaking. The fact of trusteeship when related to an individual or a corporation of good repute and high esteem carries an atmosphere of confidence which tends to dull litigious efforts by *cestuis*. It sometimes happens that the appointment of a guardian *ad litem* becomes a *pro forma* proceeding to conform to legal practice. Here it developed that the children's mother, appointed guardian *ad litem,* had, with the benefit of competent counsel, the keenness to contest the suit and the persistence to carry it through to an appeal from an adverse decision. But the principle is that a trustee should not encourage a condition which leads inevitably to a fundamental

clash between his personal interests and the interests of the trust and should not retain his trusteeship when such a clash becomes an open fight.

However, since there was no appeal and there is no evidence of bad faith and the dispute is now resolved and does not present a continuing conflict, we find no occasion for a removal. But if complainant had divested itself of its trusteeship and had come in with a bill in its individual behalf seeking its remedy—instead of, as now, filing the bill as trustee and making itself, individually, a party defendant—and had lost, it would, in the normal course, have been subjected to costs and allowances; and we consider that it should be, now. Costs and counsel fees in the proceedings heretofore had in the court below, on this appeal, and on all further proceedings in the Court of Chancery on remand, are to be borne by Fidelity Union Trust Company.

The cause is remanded to the Court of Chancery to be disposed of consistently with this opinion.

BODINE, J. (Dissenting.)

This case involves the construction of a will. We do not disagree with the findings of the court as to the time of the vesting of the remainder.

We think, however, all the other matters elaborated in the opinion are entirely unnecessary to the decision and we disagree with the conclusions therein made.

Hereafter, the Fidelity Union Trust Company will be referred to as the Trust Company.

At the time the bill was filed for instructions, the company found that there was a claimant against a trust fund created by will, which had been placed by court order in its custody and against which fund it also had a claim by reason of an assignment from another trust company whose assets it had taken over.

The bill was a full and complete disclosure of all the pertinent facts and circumstances surrounding the situation. The Court of Chancery decided there was nothing inconsistent in the Trust Company's position in this case in being both trus-

tee and claimant, and that the remainder in the trust estate was vested.

The sole question argued in this court was whether the remainder was, at the time in question, vested or contingent. This court holds that it was not vested.

We do not disagree with that finding but are at a loss to understand how the conduct of the Trust Company comes before us, and, if it does, in what respect that conduct warrants censure.

A trustee finding himself occupying possibly inconsistent positions cannot do otherwise than disclose the situation to the Court of Chancery and ask its instructions. In so doing no novel step is taken. A different construction of the law by this court from that adopted by the Court of Chancery with respect to the will in question cannot make conduct, which was blameless before the decision, reprehensible.

The Trust Company had a perfect right to argue in the Court of Chancery that the remainder was vested. It remained for this court to find otherwise; but, for our part, we cannot find that because a litigant fails to convince the majority of this court of his theory of the case that he straightway becomes untrue to his trust, when he has disclosed to the court, in the first instance, the position which he occupied. Even the majority make no finding of bad faith and their decision is specious without such finding.

The trustee having made a full and fair disclosure should be completely exonerated even if the court, on the main question, disagrees with the court below in the construction of the will.

Judge Wells joins in this dissent.

*For affirmance*—Heher, J.   1.

*For reversal*—The Chief-Justice, Donges, Colie, Rafferty, Dill, Freund, McGeehan, JJ.   7.

*For reversal not on opinion*—Bodine, Wells, JJ.   2.