21 N.J. Super. 289 (1952)
91 A.2d 162
LEE ROSENCRANS, ET ALS., PLAINTIFFS,
v.
WILLIAM M. FRY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided August 22, 1952.
*291 Mr. Jerome C. Eisenberg tried the cause for plaintiffs (Eisenberg & Spicer, attorneys).
Mr. Ernest E. Roberts, of the Florida Bar, by special leave of the Court, tried the cause for defendant (Mr. William Abbotts, attorney).
SCHETTINO, J.S.C.
On December 7, 1944, Charles Rosencrans died a resident of Monmouth County, New Jersey. The 19th clause of his will dated July 10, 1944, provides:
"NINETEENTH: I devise and bequeath the remaining one-half of my Estate, consisting of both real and personal property, wherever the same may be situated or located, and which is not specifically disposed of herein, including all stock owned by me in the Monmouth Plumbing Supply Co. Inc., a Florida Corporation, other than the twenty (20) shares, herein bequeathed outright unto my good friend, WILLIAM M. FRY, unto LEE ROSENCRANS and WILLIAM M. FRY, in Trust, nevertheless, on the following conditions, to wit:
That the income therefrom shall be paid to my beloved wife, LEE ROSENCRANS, until her death, at which time the said Trust shall terminate and cease and the principal of the trust estate created by this paragraph Number Nineteenth, shall be paid over, transferred and delivered absolutely and free from further trust, unto my beloved *292 nephews, Arthur Rosencrans and Harry Rosencrans, share and share alike; provided, however, that my said nephews Arthur and Harry Rosencrans, shall not sell, hypothecate or otherwise dispose or encumber such stock of the Monmouth Plumbing Supply Co., Inc., a Florida Corporation, for a period of Five (5) years after the death of my wife, Lee, during which said period of Five (5) years, and also during the existence of said Trust, I do hereby give unto my friend, William M. Fry, the right to purchase any or all of said stock at its par value of $25.00 per share, and further, that my said nephews, Arthur and Harry Rosencrans, shall at no time after said period of Five years after the death of my said wife, Lee, sell any portion of said stock, without first offering the same for sale to the said William M. Fry, at its par value of $25.00 per share."
The present litigation arises out of the right given to William M. Fry to purchase the shares of stock.
Monmouth Plumbing Supply Co., Inc., is a corporation of the State of Florida, there engaged in the plumbing supply business.
As of the time of his death the testator owned 3,045 shares of its corporate stock, out of a total of 6,661 shares outstanding. As the 19th clause of the will indicates, Rosencrans bequeathed 20 shares to Fry and accordingly the option related to the balance of 3,025.
Mrs. Rosencrans was named and qualified in New Jersey as executrix. She and Fry qualified in New Jersey as trustees under the 19th clause, but the trustees never received from the executrix the assets which were to constitute the corpus of the trust. Subsequently, at Mrs. Rosencrans' request, Fry qualified as ancillary executor in Florida. The shares of stock were transferred to him as ancillary executor and were so held until Fry, upon request made during the pendency of this litigation, retransferred the shares to the executrix.
In 1946, Fry expressed to Mrs. Rosencrans his desire to buy the shares, but for reasons later mentioned he refrained from exercising the option. In January 1949 he elected to exercise the option, and because Mrs. Rosencrans denied that he had a right to purchase during her lifetime, Fry on January 20, 1949, instituted a suit in Florida praying that *293 he as ancillary executor sell the shares to himself individually for $25 per share, as provided in the will. That action precipitated the present suit. Mrs. Rosencrans, individually and as trustee, filed a complaint in our Superior Court on February 7, 1949, alleging that the situs of the trust is in New Jersey, that the trust and its assets are not within the jurisdiction of Florida, and that Fry's asserted right involved a construction of the will. She prayed for a restraint forbidding Fry to prosecute the Florida suit or from proceeding anywhere other than in New Jersey. Fry consented to the restraint and filed an answer and counterclaim in this cause, seeking a construction of the will and a judgment determining his right to buy the shares at the stated figure.
On December 29, 1949, Mrs. Rosencrans filed a petition in this cause for leave to add herself in her capacity as executrix and to include a second count requiring Fry to make discovery and to account as ancillary executor and to turn over the shares of stock to the executrix. Fry immediately transferred 3,025 shares, as stated above. An order was entered approving of that transfer, permitting Fry to account as ancillary executor in Florida, permitting the filing of an amended complaint containing the additional count already described, and also admitting as parties plaintiff the decedent's nephews, Arthur and Harry Rosencrans, the remaindermen named in the 19th clause.
On March 10, 1950, it was ordered that the action "be partially heard * * * on the sole question whether the defendant has a present right to buy the shares." That hearing was held on May 9, 1950 before Judge Rogers who at conclusion of the hearing decided that Fry had a present right to buy the shares. Because of Judge Rogers' illness, a judgment upon his conclusions, signed by Judge Francis, was not entered until May 18, 1951.
On May 29, 1950, following Judge Rogers' oral determination, the defendant filed his answer to the amended complaint and a counterclaim setting forth the determination of his right to buy and praying that it be also adjudged that he *294 is entitled to all dividends declared upon the shares since January 20, 1949, the date of the commencement of the Florida action.
In the period which intervened between the oral determination of May 9, 1950, and judgment of May 18, 1951, the situation was complicated by the certain events, which I shall now describe together with the preliminary factual developments connected therewith.
Following the decedent's death, the board of directors consisted of Mrs. Rosencrans, Fry, and a Mr. Wherry, an employee of the company. On February 16, 1950, at Mrs. Rosencrans' request, the remaindermen Arthur and Harry Rosencrans were elected to the board of directors together with the three prior directors. Thus the Rosencrans' interests acquired control of the board. On January 18, 1951, at a meeting of the board, as to which apparently neither Arthur nor Harry Rosencrans had notice, a $4 cash dividend was voted. On February 15, 1951, which of course was after the delivery of Judge Rogers' conclusions but before the entry of the judgment therein on May 18, 1951, another meeting of the board was held at which, over the negative vote of Fry and Wherry, it was resolved:
(1) That a dividend of $10 per share (apparently in addition to the $4 dividend voted on January 18, 1951) be paid to holders of record as of February 15, 1951;
(2) That a stock dividend of 50% be paid to holders of record as of February 15, 1951;
(3) That the authorized capital stock of the company be increased from $250,000 to $1,000,000, and declaring a further stock dividend of 300%, issuable to the holders of record as of February 15, 1951, upon the completion of the amendatory proceedings.
On February 19, 1951, Fry obtained a temporary restraining order from the Florida court enjoining the payment of the dividends purportedly declared on February 15, 1951. On February 21, 1951, plaintiffs in this case gave notice of motion to amend the second count of the complaint to charge *295 breach by Fry of his duty as trustee and in effect to condition his right to purchase upon an increase in the purchase price reflecting the undistributed earnings of the company up to such time as Fry might effectively exercise his option. On February 26, 1951, Fry applied to our court for a temporary restraining order paralleling the restraint obtained in Florida on February 19, and that restraint was granted ex parte.
The events just described apparently precipitated the entry of the judgment of May 18, 1951, mentioned above, which embodied Judge Rogers' oral determination. The same judgment granted plaintiffs leave to amend the complaint, and dissolved the restraint of February 26, 1951 obtained here by Fry, but upon condition that Mrs. Rosencrans deliver to the clerk of our court, the 3,025 shares of stock and all cash and stock dividends thereon after February 14, 1951, to be held by the clerk until the further order of the court. Mrs. Rosencrans complied with condition by depositing the 3,025 shares. I assume that the dividends purportedly voted on February 15, 1951, were not actually received by her and hence were not deposited with the clerk. On July 21, 1951, Fry obtained an order permitting him to deposit $75,625, representing the purchase price of the 3,025 shares at $25 per share, and that deposit was made on July 31, 1951.
The judgment of May 18, 1951, adjudges that Fry has a present right to purchase under the will. That determination, of course, cannot be reviewed by me and constitutes the beginning point of my consideration of the cause. The issues before me boil down to two in number: (1) Is Mrs. Rosencrans entitled to receive the dividends declared between January 20, 1949, the date of the Florida suit, and the date of Fry's deposit with the clerk of our court, on the theory advanced by her that Fry did not effectively exercise his option until he made that deposit?; (2) Is Fry, by reason of the alleged breach of duty as trustee, liable to account to Mrs. Rosencrans for that portion of the earnings of the company (allocated to the 3,025 shares of stock) which accrued between the date of the testator's death and such *296 date as Fry effectively exercised his option to buy and which were not distributed as dividends?
I do not find any substance in plaintiff's position on the first stated issue. Fry unequivocally elected to buy in January 1949. Mrs. Rosencrans made it perfectly plain that she would resist his effort to buy, and in fact obtained a restraint against the Florida proceeding. A formal tender would have been a useless gesture. Mrs. Rosencrans did not then suggest that a gesture of that kind stood between Fry's offer to buy and her willingness to consummate the sale. She flatly asserted that he did not have the right to buy. Hence, if a tender were legally necessary, it was excused by Mrs. Rosencrans' stated position and was waived. Accordingly, so far as the first issue is concerned, Fry is entitled to consummate the transaction as of January 20, 1949, and is entitled to receive all dividends declared on the 3,025 shares after that date.
The second issue is exceedingly troublesome. The essence of the claim is that the company experienced sizeable earnings; that Fry, as trustee, should have caused the company to declare greater dividends during the period which intervened between the testator's death in December 1944 and the date of the exercise of the option, which I found to be January 20, 1949. The failure of Fry to cause greater dividends to be declared is claimed to constitute a breach of his duty as co-trustee under the will. But Fry was also a director of the company and was saddled with the duties of that office. It is impossible to evaluate the performance of his duty as trustee under the will without taking into account the propriety of his performance as director of the company. Fry asserts that since the company is a Florida corporation, matters relating to internal management should be determined only by the court of Florida. Ordinarily that is true, and moreover since the corporation is not a party to this action and plaintiff does not sue as a representative of all stockholders, no determination in this case could possibly conclude the corporation or the stockholders. Accordingly such *297 rights as Mrs. Rosencrans may have under Florida law against the corporation with respect to the omission to declare greater dividends between the date of testator's death and January 20, 1949, must be asserted by her in Florida, and although I must, as stated above, consider, on the basis of the records before me, Fry's performance as director insofar as it bears upon the discharge of his duty as trustee, I intend no binding effect in any finding of fact or conclusion of law except with respect to Fry's obligation as trustee.
The difficulty in this case arises from a potential conflict of duties and interests which the testator himself created. In his will the testator requested that Fry be elected president of the company, and he was so elected. As president and director Fry was chargeable with the duty of advancing the corporate interests and the interests of all stockholders. Slightly less than 50% of the shares were in trust. The remainder were held by approximately 50 investors. As trustee under the 19th clause, Fry was under a duty to secure income for the life tenant, and I should add that I believe that Fry had the duty of a trustee by reason of his qualifying as such, despite the fact that the trust was not formally set up by the transfer of the assets to the trustees. It is obvious that the duty as director and the duty as trustee might in some circumstances lead in different directions. They must be composed upon some rational basis. To these potentially divergent obligations, the testator added the complicating factor of an option in Fry to purchase at a fixed price, unhinged to the true worth of the shares. Thus declarations of dividends prior to the exercise of the option would reduce the value of the purchase to Fry.
Fry did not originate the underlying conflict by any action of his own; the testator's will designed the situation. Hence this case does not fall within the ambit of those authorities which hold that a trustee may not place himself in a position where it would be for his own benefit to violate his duty as trustee, and that a trustee who without fault finds himself in a position where his interest conflicts with that of the *298 beneficiary should resign the trust. See In re Koretzky, 8 N.J. 506, 528 (1951). The testator willed that Fry occupy that role, and this being so Fry cannot be criticized upon the naked basis of potentially conflicting interests, nor can the existence of that potentiality per se constitute a culpable circumstance to be charged against Fry in determining whether he violated his duty as trustee. Our courts recognize that not every duality of interest will disqualify a trustee, Fidelity Union Trust Co. v. Guaranty Trust Co. of New York, 140 N.J. Eq. 548, 555 (E. & A. 1947), and in the circumstances of this case, there was no cause for disqualification to which can be attributed any significance in resolving the present controversy. We must start with the proposition that Fry properly assumed the positions which the testator provided for him although, of course, Fry's actions must be carefully scrutinized in the light of the accompanying duties. And in appraising his behavior, it must be kept in mind that Mrs. Rosencrans was his co-trustee; that she was on the board of directors with him; that she was kept fully informed of the financial condition of the company; that she approved and voted for the dividend, wage and bonus policies of the company and the program of expansion pursued by the company after her husband's death. It was not until February of 1951 that Mrs. Rosencrans took a position as director which could in any way be deemed to be critical of the earlier dividend policy of the board, and the controversial dividend action of February 15, 1951 described above, is at most a reflection of the views of Mrs. Rosencrans as of that date, rather than as of the period between her husband's death and January 20, 1949.
The testator was a man of considerable business experience. He could not but have appreciated the delicate role which he assigned to Fry. The testator presumably was confident that Fry would act with fairness in discharging his corporate duties and his fiduciary duty under the will, notwithstanding the option to purchase. I cannot find on the record before me that Fry disappointed that expectation.
*299 The book value per share and of the 3,025 shares was stipulated to be the following as of the dates shown:

 Jan. 31, 1943 ..... $55.80 per share or $168,795.00
 Jan. 31, 1944 ..... 59.79 per share or 180,864.75
 Jan. 31, 1945 ..... 61.67 per share or 186,551.75
 Jan. 31, 1946 ..... 66.00 per share or 199,650.00
 Jan. 31, 1947 ..... 74.00 per share or 223,850.00
 Jan. 31, 1948 ..... 89.00 per share or 269,225.00
 Jan. 31, 1949 ..... 109.00 per share or 329,725.00
 Jan. 31, 1950 ..... 121.00 per share or 366,025.00.

It is apparent that the price of $25 fixed by the testator in his will, which as stated was dated July 10, 1944, was unrelated to the book value at that time. The record shows that Fry was the substantial figure in the year-'round business operations of the company during the testator's declining years. Fry started with the company in November, 1924, and became manager in about 1934. The testator apparently deemed Fry to be entitled to the benefaction which his will exhibited.
The dividends declared in the lifetime of the testator did not exhaust the annual earnings. It is true that for a period the company was under contractual restriction as to dividends by reason of an outstanding bond issue which so provided, but after the satisfaction of the bond issue there was not during the testator's life a corporate policy of full distribution of earnings. Hence the testator must have contemplated that some earnings would be retained. In fact, both Mrs. Rosencrans and Fry agree that the testator advocated the very expansion program which the company pursued after the testator's death with the complete approval of Mrs. Rosencrans.
So far as the record shows, the earnings, less dividends declared, were retained to accomplish that expansion program and to enable the company to handle the increased volume of business. The testimony further shows that the erection of an addition at West Palm Beach and the expansion *300 into Ft. Lauderdale were imperatively required to meet competition. Indeed, plaintiffs expressly disavow any criticism of Fry's operations in behalf of the company. There is no basis in the testimony upon which I could possibly find that the cash and liquid assets retained were excessive in the light of the actual needs of the business. No witness even so suggested. An accountant testified for plaintiffs that the surplus accumulations might invite tax difficulties, but Fry testified that the company's tax adviser was of a contrary view. Plaintiffs' witness, however, did not suggest that the assets retained exceeded the corporate needs, and accordingly I do not feel that the disputed tax aspect has any compelling force in the present inquiry. From the point of view of the corporation and of all of the stockholders (disregarding Mrs. Rosencrans' special personal interest as a life tenant), the record reveals no basis for criticism of Fry's performance as director.
In the light of the foregoing, how can this court hold that Fry, as trustee, should have pursued a course different from that which pursued as director is, upon the present record, unexceptionable? It may be that in some settings a trustee situated as was Fry might equitably be required, as between himself and the beneficiary, to account for a portion of the earnings even though in a stockholder's suit against the corporation the facts would not demonstrate that arbitrary conduct which is the sine qua non of judicial interference with the directors' judgment as to dividend action. I express no view as to that proposition because the facts of this case do not invite a possible application of it.
Our Supreme Court has held that "In voting shares of stock fiduciaries are under a duty to vote in such a way as to promote the interests of the beneficiaries." In re Koretzky, 8 N.J. 506, 526 (1951). There is no doubt that the board would have pursued whatever policy Fry and Mrs. Rosencrans desired. Indeed, they constituted a majority of the board until 1950, and the practical control which resided in the shares of the deceased would probably have sufficed to *301 support the board in pursuing a more liberal dividend policy. But the quoted principle does not embrace a duty to advance the interest of a beneficiary at the expense of the corporation and other outstanding stockholders' interests. That duty must be adjusted with the duty of a director as such. And where, as here, better than 50% of the shares are held by others, and the policy of the board is unassailable from the standpoint of the company's interests, and indeed the beneficiary approved and voted for the course pursued, Fry cannot be said to have been remiss in his duty as co-trustee. It should be noted again that the testator could readily have related the purchase price to the value of the shares and thus have assured the beneficiary of any increased value consequent upon withheld earnings, but he did not by that method or by any other language evince an intention that Fry, as director, should pursue a course other than that dictated by the welfare of the company.
It may be that the earnings of the company exceeded the expectations of the testator and that, had he envisioned its success, he would have tied the purchase price to a formula of some kind. On the other hand, the testator may well have thought that Fry would earn and be entitled to the fruits of success, however great they might be. All of this is in the realm of speculation. Fry may indulge in that speculation and make an adjustment which he believes would have gratified his benefactor. But I may not speculate or translate a speculation into a duty. I cannot write a better will than the testator executed. The most I can do is to weigh the question whether Fry, in the difficult role which the testator created for him, acted with such unfairness as to prompt a court of conscience to charge him with breach of trust. My task is eased by the circumstance that in the fall of 1946, at a time when the book value was between $66 (as of January 31, 1946) and $74 (as of January 31, 1947), as contrasted with the book value of $61.67 as of January 31, 1945 (the testator died December 7, 1944), Fry approached Mrs. Rosencrans for the purpose of purchasing the stock. She *302 was so upset by Fry's proposal that he, out of consideration for her, forbore to press it at that time. In short, Fry did not sit back to see which way the corporate fortunes went.
Had Fry pursued his purpose of purchasing the shares in 1946, the income which Mrs. Rosencrans would have received from an investment of that purchase price would have been quite limited, as contrasted with the dividends paid on the shares plus the salary and bonuses paid to her. It is true that the dividends were not large in the light of total earnings, but as stated above, they have not been shown to have been unjustifiable in the light of the corporate needs. The dividends paid and the bonuses to Mrs. Rosencrans were increased after her husband's death and the net benefit to Mrs. Rosencrans exceeded considerably the probable income if Fry had purchased the shares in 1946. The dividend action taken before and after testator's death was as follows:

 January 24, 1944 .......... $1 per share
 January 18, 1945 .......... 1 per share
 January 21, 1946 .......... 1 per share
 January 24, 1947 .......... 2 per share
 January 24, 1948 .......... 4 per share
 January 20, 1949 .......... 4 per share
 January 19, 1950 .......... 4 per share
 January 18, 1951 .......... 4 per share

Mrs. Rosencrans received the following bonuses:

 1944 ................. $750.00
 1945 ................. 1202.02
 1946 ................. 6875.00
 1947 ................. 7750.00
 1948 ................. 5000.00
 1949 ................. 4750.00

The bonuses to her were disallowed by Internal Revenue because of its view that the salary paid amply compensated *303 her for her services, but the bonuses were nontheless paid to her.
Plaintiffs suggest that even if greater cash dividends should not have been declared in the light of the corporate needs, yet a stock dividend could have been declared without affecting the corporation's ability to carry out its program. Plaintiffs assume that if a stock dividend had been declared prior to the exercise of the option, it would have constituted income to Mrs. Rosencrans within the meaning of the 19th clause and would have remained hers despite a later exercise of the option to purchase the 3,025 shares. Fry, of course, disputes that assumption and contends that a stock dividend would merely have represented a division of the very shares which he was entitled to receive for the purchase price. I think the testator intended that for the sum of $25 X 3,025, Fry would receive what was substantially 50% of the outstanding stock, and did not contemplate that Fry's option could be reduced in value by a stock dividend. Certainly that is so as to a stock dividend declared out of surplus which existed at the time of testator's death, and the same would seem to be true of surplus later acquired since the testator did not make the purchase price variable with the value of the stock. However, I need not pursue that matter because again I cannot find on the basis of the record that the corporate situation was such as of or prior to January, 1949, as to make the omission to declare a stock dividend evidence of any breach of Fry's duty as trustee.
Hence I find that Fry is entitled to receive the 3,025 shares of stock and all dividends declared after January 20, 1949 (the cash dividend of Jan. 20, 1949 is payable to the trust and ultimately to Mrs. Rosencrans), and of course the trust is entitled to receive the moneys deposited by Fry with the clerk of the court.
I should add a word about the criticism levelled at bonuses paid to Fry upon board action with the affirmative vote of Mrs. Rosencrans. Since the testator himself requested that Fry be elected president of the company, neither the receipt *304 of nor proper increases in salaries or bonuses could per se be deemed to violate the trust. The testator contemplated that Fry would receive adequate compensation for his services to the company notwithstanding his role of co-trustee of the stock. I find nothing to suggest that the compensation was excessive. At any rate, in the light of conclusions already reached, any quarrel relating to the amount of compensation concerns only the company and Fry, for the reason that a determination that any portion was excessive would neither augment the purchase price nor so affect the corporate financial picture as to lead to a different result with respect to the issue whether the failure to cause the declaration of greater dividends constituted a violation of the trust duties.
Submit judgment on notice or with consent as to form. No costs are allowed.